IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WALTER PRESS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-25-2972 |
| WICOMICO COUNTY BOARD OF EDUCATION, et al., | * | |
| | * | |
| Defendants. | | |
| | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendants the Board of Education of Wicomico County,[1] Micah Stauffer, Kimberly Miles, Lisa Forbush, and Christina Murray's (collectively, "Defendants") Motion to Dismiss (ECF No. 12) and self-represented Plaintiff Walter Press' Motion for Leave to File a Second Amended Complaint (ECF No. 20), Motion for Leave to File Physical Exhibits (ECF No. 21), and Motion to Seal (ECF No. 22). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant Defendants' Motion to Dismiss, deny Press' Motion for Leave to File a Second Amended Complaint, and deny as moot Press' Motion for Leave to File Physical Exhibits and Motion to Seal.

---

[1] Self-represented Plaintiff Walter Press identifies this Defendant as Wicomico County Board of Education, (Compl. ¶ 8, ECF No. 1); however, its legal name is the Board of Education of Wicomico County, and the Clerk will be directed to update the docket accordingly. (Mem. Supp. Mot. Dismiss ["Mot."] at 1 n.1, ECF No. 12-1).

# I.     BACKGROUND

Self-represented Plaintiff Walter Press is the father of E.P.,[2] a student enrolled at Fruitland Primary School ("Fruitland"). (Compl. ¶¶ 7, 14, ECF No. 1). Press and his daughter's mother (the "mother") share legal custody of E.P. (Id. at 2: Attach. at 3, ECF No. 1-2).[3] Press brings claims against the Board of Education of Wicomico County (the "Board"), as well as four employees of the Board in their individual and official capacities. (See Compl. ¶¶ 8–13). At the time of the relevant events alleged in the Complaint, Defendant Micah Stauffer was the Superintendent of Schools, Defendant Kimberly Miles was the Assistant Superintendent, Defendant Lisa Forbush was the Principal of Fruitland,[4] and Defendant Christina Murray was Vice-Principal of Fruitland. (Id. ¶¶ 9–12).

E.P.'s mother enrolled her at Fruitland in September 2023 without Press' knowledge or consent. (Id. ¶¶ 14–16). The Complaint identifies a series of alleged incidents "[f]rom Fall 2023 onwards," involving Press and Defendants that give rise to the asserted claims. (Id. ¶ 17). First, Press alleges Fruitland staff "refused to release [his] daughter during his court-ordered custodial time," requiring the Wicomico County Sheriff's Department to get involved. (Id.). Press also alleges that school officials issued him a no-trespass order

---

[2] The Complaint refers to Press' daughter as E.P., (Compl. ¶ 7, ECF No. 1), the attachments to the Complaint refer to her as La'Niyah Church, (Attach. at 2, ECF No. 1-2), and Defendants refer to her as L.C., (Mot. at 3).

[3] Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system.

[4] Defendants note Forbush is now Wicomico County Public Schools Supervisor of Special Education. (Mot. at 3).

"without [a] hearing or justification" and that he was subsequently criminally charged for a violation of that order. (Id. ¶¶ 18–19). Press asserts that school officials refused to lift the order after he was acquitted of all criminal charges related to the violation and denied Press' requests to homeschool or transfer his daughter. (Id. ¶¶ 19–20). Press further contends that on May 2, 2025, his daughter was taken from school to "emergency psychiatric detainment" without his consent and that Defendant Murray disregarded his instructions not to transport his daughter, even though Press was present at the school to pick up his daughter. (Id. ¶¶ 21–24). Finally, Press alleges that school officials "continued to refer to [him] as dangerous or mentally unstable" in statements to "third parties, including [Child Protective Services ("CPS")] and other agencies," thereby damaging his reputation and "undermining" his participation in his daughter's education. (Id. ¶¶ 25–26).

On September 9, 2025, Press initiated this action, in which he asserts three claims under 42 U.S.C. § 1983 against all Defendants for violating his right to substantive due process (Count I), violating his right to procedural due process (Count II), and retaliating against him in violation of the First Amendment (Count III). (Id. at 4). Press also brings one count of Monell liability (Count IV) against the Board and one count of defamation/slander against the individual Defendants in their personal capacities (Count V). (Id.). He seeks declaratory relief that Defendants violated his rights; a permanent injunction vacating the no-trespass order and allowing him to homeschool or transfer his daughter; compensatory damages for emotional distress, lost time, and reputational harm; punitive damages for willful, malicious conduct; and costs and attorneys' fees. (Id. at 5).

3

On October 27, 2025, Defendants filed the instant Motion to Dismiss. (ECF No. 12). Press filed a Response in Opposition on November 14, 2025, (ECF No. 14), to which Defendants filed a Reply on December 1, 2025, (ECF No. 16). Press also filed a Motion for Leave to File Physical Exhibits, (ECF No. 5), and for Leave to File a Sur-reply, (ECF No. 17), both of which the Court granted on March 4, 2026, (ECF Nos. 18, 19). On June 22, 2026, Press filed the instant Motions for Leave to File a Second Amended Complaint, (ECF No. 20), for Leave to File Physical Exhibits, (ECF No. 21), and to Seal, (ECF No. 22), each of which remain unopposed.

## II.    DISCUSSION

### A.    Motion to Dismiss

#### 1.    Standards of Review

##### a.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires a plaintiff to establish the Court's subject-matter jurisdiction by showing the existence of either a federal question under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. A plaintiff may establish federal question jurisdiction by asserting a claim that arises from a federal statute or from the U.S. Constitution. 28 U.S.C. § 1331. To show that the claim arises on one of these bases, the federal question must appear "on the face of the plaintiff's properly pleaded complaint." AES Sparrows Point LNG, LLC v. Smith, 470 F.Supp.2d 586, 592 (D.Md. 2007) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). When a party challenges subject-matter jurisdiction, however, the Court may consider "evidence outside

the pleadings" to resolve the challenge. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction. Id.

### b.    Rule 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2. Analysis

Press brings three claims under 42 U.S.C. § 1983 against all Defendants (Counts I–III) and one additional claim under § 1983 against the Board, specifically (Count IV). (Compl. at 4). 42 U.S.C. § 1983 provides in pertinent part that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To prevail on a claim under Section 1983, "a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a 'person acting under the color of state law.'" Willey v. Bd. of Educ. of St. Mary's Cnty., 557 F.Supp.3d 645, 663 (D.Md. 2021) (quoting Bost v. Wexford Health Sources, Inc., No. ELH-15-3278, 2018 WL 3539819, at *19 (D.Md. July 23, 2018)).

While "Section 1983 provides a federal forum to remedy many deprivations of civil liberties . . . [t]he Eleventh Amendment bars such suits" brought against a state or state official in his or her official capacity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 71 (1989). Moreover, Section 1983 expressly creates a right of action only against "persons," not states, state agencies, or state officials. See Rosenfeld v. Montgomery Cnty. Pub. Schs., 41 F.Supp.2d 581, 586 (D.Md. 1999). Thus, this Court has repeatedly held that Maryland county school boards, as state entities, and their employees, as state officials, are not subject to suits brought under § 1983 for monetary damages. See id.; Jones v. Frederick Cnty. Bd. of Educ., 689 F.Supp. 535, 537–38 (D.Md. 1988); McNulty v. Bd. of Educ. of Calvert Cnty., No. DKC-03-2520, 2004 WL 1554401, at *4 (D.Md. July 8, 2004); N.T. v. Balt. City Bd. of Sch. Comm'rs, No. JKB-11-356, 2012 WL 3028371, at *2 (D.Md. 2012).

Nonetheless, individual state officials may still be subject to suit under certain circumstances. First, a plaintiff may bring a suit for prospective, injunctive relief against a state official to remedy an ongoing violation of federal law. Ex Parte Young, 209 U.S. 123,

7

155–56 (1908); Bland v. Roberts, 730 F.3d 368, 390 (4th Cir. 2013). As the United States Court of Appeals for the Fourth Circuit has explained, this exception to Eleventh Amendment immunity allows plaintiffs to bring claims against state officials "if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998) (emphasis added). This exception is narrow: "[i]t applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (citations omitted). Second, a state official may be subject to suit under § 1983 in his or her individual capacity. Hafter v. Melo, 502 U.S. 21, 27, 31 (1991) (holding that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983" and that the Eleventh Amendment does not bar such suits); Goodman v. Rockefeller, 947 F.2d 1186, 1187 (4th Cir. 1991) (distinguishing between official and personal capacity suits).

### a.    Board - § 1983 Claims

Because this Court has consistently found county school boards to be state agencies, and therefore immune from suit under § 1983, it will dismiss Counts I–III as to the Board. See Jones, 689 F.Supp. at 538 (holding that a Maryland County Board of Education is a state agent entitled to Eleventh Amendment immunity); Rosenfeld, 41 F.Supp.2d at 586; Lewis v. Bd. of Educ. of Talbot Cnty., 262 F.Supp.2d 608, 614 (D.Md. 2003).

The Court also will dismiss Count IV, which asserts a <u>Monell</u> claim against the Board. This Court has held that "<u>Monell</u> liability is only available for municipalities and is not available for a state or its departments." <u>Conney v. Maryland</u>, No. BAH-25-2425, 2026 WL 1723924, at *3 (D.Md. June 15, 2026) (quoting <u>Murrill v. Merritt</u>, No. DKC-17-2255, 2022 WL 4080308, at *10 (D.Md. Sep. 6, 2022)). Thus, because Maryland county school boards are state entities, not municipal bodies, the Board is not liable under <u>Monell</u>. <u>See</u> <u>Gladden v. Bd. of Educ. of Harford Cnty.</u>, No. SAG-25-2801, 2026 WL 1648994, at *2 (D.Md. June 8, 2026).

### b.    Individual Defendants - § 1983 Official Capacity Claims

As with the claims asserted against the Board, Press' claims against the individual Defendants in their official capacities will be dismissed based on Eleventh Amendment immunity. Each of the individual Defendants is an employee of the Board. (Mem. Supp. Mot. Dismiss ["Mot."] at 3, ECF No. 12-1). Because the Board is a state agency, the individual Defendants employed by it are state officials and are (1) entitled to Eleventh Amendment immunity, and (2) not considered "persons" for purposes of bringing suit under § 1983. <u>See</u> <u>Dennis v. Bd. of Educ. of Talbot Cnty.</u>, 21 F.Supp.3d 497, 501–02 (D.Md. 2014) (holding that defendants in their official capacities as school officials are not "persons" under § 1983); <u>Dyer v. Md. State Bd. of Educ.</u>, 187 F.Supp.3d 599, 611 (D.Md. 2016) ("[P]laintiff's [§ 1983] claims against the State Board and its members in their official capacities must fail on Eleventh Amendment grounds.").

Press contends that he is still entitled to seek prospective declaratory and injunctive relief from the individual Defendants under <u>Ex Parte Young</u>. (Resp. Opp'n Mot. Dismiss

["Opp'n"] at 2, ECF No. 14). The Court disagrees. The Ex Parte Young exception to Eleventh Amendment immunity allows claims against state officials only if the alleged violation is ongoing and the plaintiff is seeking prospective relief. Republic of Paraguay, 134 F.3d at 627. Here, Press' claims for declaratory and injunctive relief both relate to the issuance and enforcement of the no-trespass order.[5] (Opp'n at 1; Compl. at 5). The order, however, expired on March 14, 2025, nearly six months before Press filed his complaint. (Attach. at 1, ECF No. 1-2). Thus, Press seeks to remedy a past alleged violation that is not ongoing and fails to establish that an exception to Eleventh Amendment immunity applies. See Jones, 689 F.Supp. at 538 (holding that school superintendent and principal qualify as state officials and thus may only be sued in their official capacities for prospective, injunctive relief under the Eleventh Amendment).

### c.    Individual Defendants – § 1983 Personal Capacity Claims

The Court also will dismiss Press' claims against the individual Defendants in their personal capacities. While plaintiffs may bring § 1983 claims against state officials in their personal capacity, see Hafter, 502 U.S. at 27, "the plaintiff must do more than make conclusory claims of individual . . . conduct; specific allegations of individual conduct are required," Willey, 557 F.Supp.3d at 664. Here, Press makes factual allegations concerning only two of the four individual defendants: Murray and Stauffer. (Compl. at 3). Although

---

[5] Press also seeks injunctive relief allowing him to homeschool his daughter. (Compl. at 5). School officials stated that they were unable to grant Press' requests to homeschool her due to disagreement between Press and the mother, both of whom share legal custody of their daughter, regarding her education. (Id. ¶ 20: Attach. at 3, ECF No. 1-2). Federal courts generally do not intervene in child custody arrangements, and this Court will decline to do so here. See Cantor v. Cohen, 442 F.3d 196, 202 (4th Cir. 2006).

Press refers generally to "school officials" throughout the Complaint, the remaining two defendants, Miles and Forbush, are only named in the paragraphs identifying them as parties to the suit. (Id. at 2–3). Press therefore fails to plead a sufficient factual basis to state a plausible claim against Miles and Forbush. Accordingly, the Court will dismiss his § 1983 claims against Miles and Forbush in their personal capacities. See Willey, 557 F.Supp.3d at 664 (granting motion to dismiss where the complaint asserted § 1983 claims against defendants in their individual capacities but did not include any factual allegations pertaining to those defendants).

As to Murray and Stauffer, Press alleges "Superintendent Stauffer . . . refused to lift the no-trespass order and denied [Press'] requests to homeschool or transfer his daughter," and that Murray "ignored" Press' request to not transport his daughter to "emergency psychiatric detainment" on May 2, 2025. (Compl. at 3). Press' allegations are insufficient to sustain Counts I–III against either defendant in their individual capacity for the reasons set forth below.

### i.    Count I

Count I of the Complaint appears to allege that Murray and Stauffer violated Press' substantive due process rights by refusing to release his daughter into his custody on unspecified occasions, denying his requests to homeschool his daughter, and transporting his daughter to emergency care without his approval. (Id. at 3–4). To successfully establish such a violation, Press must demonstrate "(1) that he had a protected liberty interest; (2) that the state deprived him of; and '(3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'"

Agbara v. Prince George's Cnty. Pub. Schs., No. TJS-20-306, 2020 WL 7425298, at *6 (D.Md. Dec. 18, 2020) (quoting Quinn v. Bd. of Cnty. Comm'rs for Queen Anne's Cnty., 862 F.3d 433, 443 (4th Cir. 2017)). "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)). This, however, is a high standard: "'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,'" United States v. Salerno, 481 U.S. 739, 746 (1987) (quoting Rochin v. California, 342 U.S. 165, 172 (1952)), and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992)).

Here, Press fails to establish that the individual Defendants' conduct deprives him of a protected liberty interest. While Press argues Stauffer's refusal to rescind the no-trespass order interfered with his right to the care and custody of his daughter, this Court and the Fourth Circuit have repeatedly held that parents do not have a constitutionally protected interest in accessing school property. Lovern v. Edwards, 190 F.3d 648, 655–656 (4th Cir. 1999) (holding school superintendent did not violate plaintiff's constitutional rights by prohibiting him from entering school grounds); Ajenifuja v. Owusu, No. DKC-23-1598, 2024 WL 1256259, at *6 (D.Md. Mar. 25, 2024) ("Courts have uniformly held that parents do not have a constitutional right to enter school premises.").

Nor does Count I sufficiently allege a substantive due process violation resulting from Defendants' denial of Press' request to homeschool his daughter. Although parents

have a constitutionally protected liberty interest in the "care, custody, and control of their children," Troxel v. Granville, 530 U.S. 57, 65 (2000), the facts alleged do not show that Defendants deprived Press of that right. If anything, the facts show only a lack of agreement between Press and the child's mother regarding their daughter's educational arrangements. Specifically, in response to Press' requests to homeschool his daughter, school officials stated that they could not proceed without agreement between both parents and advised Press to consult his counsel or the court. (Attach. at 3).

Finally, the transport of Press' daughter to the "emergency psychiatric detainment" by Defendants also does not rise to the level of a substantive due process violation. (Compl. ¶ 23). At minimum, Defendants' actions were not arbitrary and did not "shock the conscience." Salerno, 481 U.S. at 746. Indeed, by Press' own account, his daughter was transported to care following a referral from a school counselor. (Compl. at 3). Additionally, Defendants dispute—and Press fails to allege—that they had a duty to respect Press' unilateral directions concerning his daughter. (Mot. at 8).

Because Press fails to establish that Defendants' conduct deprived him of a protected liberty interest, the Court will dismiss Count I against Defendants Stauffer and Murray.

### ii.    Count II

Press next alleges in Count II of the Complaint that Defendants violated his procedural due process rights by failing to provide "notice or [a] hearing" before issuing the no-trespass order and denying his right to homeschool his daughter. (Compl. at 3–4). A plaintiff bringing a procedural due process claim must establish: "(1) a cognizable

13

'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." Bhattacharya v. Murray, 93 F.4th. 675, 700 (4th Cir. 2024) (quoting Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 145 (4th Cir. 2009)).

As to the issuance of the no-trespass order, as noted above, parents do not have a constitutionally protected liberty or property interest in accessing school property. See Lovern, 190 F.3d. at 655–56; Ajenifuja, 2024 WL 1256259, at *6. Even if Press had successfully established a cognizable liberty interest, he had ample opportunity to appeal the no-trespass order under Maryland state law. (Mot. at 7); see Davison v. Rose, 19 F.4th 626, 642 (4th Cir. 2021) (finding post-deprivation remedies satisfied due process where "several levels of administrative review," including the option to appeal a no-trespass order, were available to the plaintiff).

Furthermore, Defendants did not violate Press' procedural due process rights by denying his requests to homeschool his daughter. As acknowledged above, Press does have a protected interest in the care and custody of his child. See Troxel, 530 U.S. at 65. The facts alleged, however, do not suggest that Defendants deprived Press of that right, only that Press' daughter's continued enrollment at Fruitland resulted from a lack of agreement between Press and the mother regarding their child's educational arrangements. (Attach. at 3). To the extent that Press' claims can be construed as a challenge to his custody arrangements with the child's mother, the Court notes that federal courts generally abstain from adjudicating child custody matters. See Cantor v. Cohen, 442 F.3d 196, 202 (4th Cir.

14

2006). Thus, Press fails to state a claim for a procedural due process violation, and the Court will dismiss Count II as to Defendants Murray and Stauffer.

### iii. Count III

In Count III, Press alleges that Defendants engaged in First Amendment retaliation against him for "exercising [his] custodial and legal rights and petitioning for redress." (Compl. at 4). To set forth a colorable First Amendment retaliation claim under § 1983, a plaintiff must allege that: (1) he "engaged in protected First Amendment activity; (2) the defendant[] took some action that adversely affected [plaintiff's] First Amendment rights; and (3) there was a causal relationship between [plaintiff's] protected activity and the defendant['s] conduct." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). A plaintiff can establish adverse action with respect to his First Amendment rights if the action is one that "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine, 411 F.3d at 500). Although the plaintiff must demonstrate "something more than a 'de minimis inconvenience' to [his] exercise of First amendment rights," he need not show that he has been wholly deprived of such rights by the defendant. Constantine, 411 F.3d at 500 (quoting ACLU of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 786 n.6 (4th Cir. 1993)). A defendant's failure to address a plaintiff's complaint or grievance "is not an 'adverse action' supporting a First Amendment retaliation claim." B.R. v. F.C.S.B., No. 1:19-CV-917, 2023 WL 2464975, at *15 (E.D.Va. Mar. 10, 2023). To establish the third element of a retaliation claim, a plaintiff must also demonstrate a causal connection between his First Amendment activity and the alleged

retaliatory action. See Constantine, 411 F.3d at 501. Such a showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliatory act was temporally proximate to that activity. Id.

Here, Press fails to identify any specific instance in which he engaged in protected First Amendment activity beyond a vague statement indicating that he "exercised custodial and legal rights and petition[ed] for redress." (Compl. at 4). To the extent Press alleges he engaged in protected activities by (1) instructing Murray not to transport his daughter to the emergency psychiatric department when he was already present to pick her up; (2) requesting permission to homeschool his daughter; and (3) requesting that Defendants rescind the no-trespass order against him, the Complaint is devoid of factual allegations demonstrating any adverse action taken by the Defendants or a causal relationship between Defendants' conduct and Press' protected activity. (Id. at 3–4).

Assuming that Press is challenging the issuance of the no-trespass order as a retaliatory action by the Defendants, he fails to identify any predicate First Amendment activity that led Defendants to issue the order. Press' instruction to Defendant Murray not to take his daughter to the hospital, his requests to rescind the no-trespass order, and his requests to homeschool his daughter seemingly all took place after the initial issuance of the order; thus, Press cannot plausibly allege that the no-trespass order was put in place because of these petitions. (Id. ¶¶ 17–24; Attach. at 1–2). Moreover, as Courts in the Fourth Circuit have stated, the inaction by school officials to later address Press' grievances—by

16

lifting the no-trespass order or granting his request to homeschool—is not sufficient to sustain a claim for First Amendment retaliation. See B.R., 2023 WL 2464975, at *15.

If Press is challenging school officials' refusal of his requests to homeschool his daughter, he also fails to establish a claim for retaliation. Although Press asserts at various points that the refusal violates his right to the care and custody of his daughter, he fails to establish how Defendants' actions in this regard have adversely affected the exercise of his First Amendment rights, specifically. (Compl. 3–4). Even assuming Press has alleged a sufficient factual basis to establish an adverse action by Defendants, he cannot demonstrate a causal connection between their refusal and his communications because school officials were clear that their refusal of his requests to homeschool were due to a lack of agreement between Press and the mother regarding their child's educational arrangements. (Attach. at 3).

Similarly, Press has not shown that Defendant Murray's decision to transport Press' daughter to the hospital on May 2, 2025 was an adverse action for the purposes of a retaliation claim or causally related to any protected activity. It is unclear from Press' Complaint that Defendants' conduct in taking his daughter to the hospital had any bearing on the exercise of his First Amendment rights or that Defendants' actions would "deter a person of ordinary firmness" from such activity. Martin, 858 F.3d at 250. Moreover, the Complaint states that Press' daughter was taken to the hospital following a referral from a school counselor. (Compl. ¶ 23). Although Press may disagree with this decision, the Complaint does not establish that it was made because of any protected activity Press engaged in.

In sum, even construing the Complaint liberally, Press fails to establish that Defendants took adverse action against him in retaliation for a protected activity. Accordingly, the Court will dismiss Count III as to Defendants Stauffer and Murray.

### d.    State Law Claim

Press also brings one count of defamation or slander (Count V), a state law claim, against all Defendants. Under 28 U.S.C. § 1367(a), district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action [over which the court has original jurisdiction] that they form part of the same case or controversy under Article III of the United States Constitution." District courts, however "may decline" to exercise supplemental jurisdiction over those claims for which the court does not have original or removal jurisdiction in four circumstances: (1) when those claims "raise[] a novel or complex issue of state law;" (2) when those claims "substantially predominate[]" over the federal claims; (3) when the Court "has dismissed all claims over which it ha[d] original jurisdiction;" or (4) when there are "exceptional circumstances" that provide "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). District courts are directed to "consider and weigh . . . the values of judicial economy, convenience, fairness and comity in order to decide . . . to exercise jurisdiction" over pending state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). "When the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims

18

remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Id. (footnote omitted).

Here, because the Court will dismiss the federal claims over which it has original jurisdiction, the only remaining claim is for defamation/slander, a state law claim. Thus, the Court declines to exercise supplemental jurisdiction and will dismiss Count V of the Complaint.

**B.      Motion for Leave to File Second Amended Complaint**

**1.      Standard of Review**

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend a complaint] when justice so requires." Justice does not require granting leave to amend when the moving party has exhibited bad faith or when the amendment would prejudice the nonmoving party or be futile. See Edell & Assocs., P.C. v. Law Offs. of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001). In determining whether the amendment is prejudicial, the Court considers the nature of the amendment and its timing. Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). The further a case has progressed, the more likely it is that amendment will be prejudicial. Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, 674 F.3d 369, 379 (4th Cir. 2012). Leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). But the Court should only deny leave to amend on the ground of futility when the proposed amendment is clearly insufficient on its face. Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).

The decision to grant leave to amend lies within the discretion of the district court. <u>Medigen</u> <u>of Ky., Inc. v. Pub. Serv. Comm'n of W.Va.</u>, 985 F.2d 164, 167 (4th Cir. 1993).

**2.    Analysis**

In his Amended Complaint, Press brings two new claims under § 1983 against all Defendants for unreasonable seizure in violation of the Fourth Amendment for the "removal and transport of [his] daughter" (Count IV), and for a "Stigma-Plus/Liberty Interest" violation based on Defendants' "materially false" and "stigmatizing statements" (Count V). (Proposed Am. Compl. ["Am. Compl."] ¶¶ 124–35, ECF No. 20-1). Press also provides additional factual allegations to support Counts I–IV of his original Complaint. (<u>Id.</u> at 3–6). Because the Court finds that Press' Proposed Amended Complaint could not survive a motion to dismiss,  it will deny his Motion for Leave to Amend (ECF No. 20) as futile.[6]

Turning first to the new claims asserted, these fail for two reasons. First, Press' claim of unreasonable seizure in violation of the Fourth Amendment (Count IV) fails for lack of standing. The "rights assured by the Fourth Amendment are personal rights." <u>Feller v.</u> <u>Feller</u>, No. TDC-18-108, 2020 WL 1322946, at *4 (quoting <u>Rakas v. Illinois</u>, 439 U.S. 128, 138 (1978)). And, because "[c]hildren are not property . . . the right to be free from an unreasonable seizure of their persons belongs to the children themselves, not their parents."

---

[6] Press does not include Defendant Forbush as a party to the suit in the Proposed Amended Complaint. (<u>See</u> Proposed Am. Compl. at 2, ECF No. 20-1). The Defendants identified in the Proposed Amended Complaint include the Board, Stauffer, Miles, and Murray. (<u>Id.</u>).

Id. Accordingly, Press has no standing, suing on his own behalf, to bring a Fourth Amendment claim for an unreasonable seizure allegedly imposed on his daughter.

Second, Press fails to state a stigma-plus due process claim in Count V. While "injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest," Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002), an individual plaintiff can establish a valid claim for due process protection where a state actor caused the plaintiff reputational injury, and thereby deprived him of some tangible interest or right, Paul v. Davis, 424 U.S. 693, 701 (1976). Under the so-called "stigma-plus" test, a plaintiff asserting a violation of such an interest "must show [(1)] a statement 'stigmatizing his good name' and damaging his standing in the community; (2) some type of dissemination or publication of the statement; and (3) some other government action that 'atler[s] or extinguishe[s] one of his legal rights." Elhady v. Kable, 993 F.3d 208, 225 (4th Cir. 2021) (quoting Paul, 424 U.S. at 706–11).

Here, Press fails to plead a sufficient factual basis to state a stigma-plus claim. He states that "Defendants made . . . stigmatizing statements" and that these statements were false and "were connected to tangible burdens . . . including school exclusion, law enforcement involvement, restrictions on parental access, interference with custody, and harm to [his] standing in related proceedings." (Am. Compl. ¶¶ 131–35). Specifically, Press alleges that Defendants "portrayed [him] as dangerous, unstable, aggressive or unfit" in communications with "school personnel, law enforcement, CPS personnel, hospital-related personnel, and other agencies." (Id. ¶¶ 94–95). Taken as true, these allegations satisfy the first two elements of a stigma-plus claim. Press, however, does not allege

21

sufficient facts regarding the third element. Rather, he makes only conclusory statements that Defendants' statements deprived him of his parental rights and harmed his standing in related proceedings without providing any facts that render these claims plausible. (Id. ¶¶ 131–35). Indeed, courts have routinely held that mere conclusory allegations that the plaintiff was stigmatized and suffered some burden as a result are insufficient. See Miley v. Hous. Auth. of Bridgeport, 926 F.Supp.2d 420, 422–23 (D.Conn. 2013) (dismissing stigma-plus claim where the complaint was "merely a formulaic recitation of the elements of a stigma plus claim and . . . devoid of further factual enhancement necessary to render the claim plausible"); TADCO Constr. Corp. v. Dormitory Auth. of N.Y., 700 F.Supp.2d 253, 266–67 (E.D.N.Y. 2010) (dismissing claim where plaintiff stated that stigmatizing statement had a tangible burden on future employment but provided no factual basis to render this claim plausible). Thus, Press fails to state a stigma-plus claim that would survive a motion to dismiss.

As to Counts I–III, the Court notes that Press provides additional factual allegations to support his original claims against Defendants. (Am. Compl. at 3–5). Even so, the Proposed Amended Complaint fails to provide any new factual allegations that would address the primary defects in the original Complaint, namely, that the Board is immune from suit, that state officials sued in their official capacities are not "persons" for the purposes of § 1983, and that the Board—as a state entity—is not liable under Monell. (See generally id.). The additional factual allegations also do not address any defect in the original Complaint pertaining to the individual Defendants' liability in their personal capacities. Many of the additions to the Complaint are merely conclusory statements or a

recitation of the elements of the alleged constitutional violation. (See, e.g., id. ¶ 40 ("Plaintiff contends the no-trespass order and continued restrictions were retaliatory . . . .")). Moreover, the new factual allegations take issue primarily with the mother's medical decisions concerning the child, rather than Defendants' conduct. For example, Press asserts that the mother authorized inpatient psychiatric evaluations for the child without his notice or consent and "had advanced unsupported or exaggerated claims regarding the child's mental health" leading up to the incident on May 2, 2025. (Id. ¶¶ 84, 88). He also objects to the conduct of hospital personnel, who "denied [him] immediate access to his daughter" when she was transported to the hospital on May 2, 2025. (Id. ¶¶ 68–72). Neither set of allegations pertain to Defendants' liability.

Press continues to assert that Defendants violated his "fundamental liberty interest in the care, [and] custody . . . of his child," (id. ¶ 108), by transporting her to the hospital on May 2, 2025, but he does not provide additional facts to indicate that Defendants' conduct was of such a character as to constitute a substantive due process violation; that is, that Defendants' conduct was "egregious" or otherwise "shocked the conscience," Cnty. of Sacramento, 523 U.S. at 846–47. Indeed, Press argues that "Defendants' conduct [in transporting his daughter] was arbitrary, unreasonable, excessive, and not narrowly tailored to any legitimate need," while also acknowledging that his daughter had "expressed feeling like she wanted to die" while at school. (Am. Compl. ¶¶ 77, 110).

Finally, Press maintains his claim for defamation/slander in his Proposed Amended Complaint, (id. ¶¶ 141–46); however, the Court will continue to decline to exercise supplemental jurisdiction over this state law claim.

In sum, Press' Proposed Amended Complaint fails to address the defects in his original Complaint or state any new claim for which relief could be granted. Accordingly, Press' Motion to File a Second Amended Complaint will be denied as futile.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 12), deny Press' Motion for Leave to File a Second Amended Complaint (ECF No. 20), and deny as moot Press' Motion to File Exhibits (ECF No. 21) and Motion to Seal, (ECF No. 22). A separate Order follows.

Entered this 6th day of August, 2026

      /s/

George L. Russell, III
Chief United States District Judge

24